535 So.2d 441 (1988)
STATE of Louisiana, Respondent,
v.
Paul J. AZAR, Relator.
No. K88-273.
Court of Appeal of Louisiana, Third Circuit.
September 12, 1988.
Writ Denied October 14, 1988.
*442 Bernard H. McLaughlin, Jr., Stockwell, Sievert, Lake Charles, Jack Martzell, New Orleans, John G. Torian, II, Lafayette, for relator.
G. Petersen, C. Killingsworth, Asst. Attys. Gen., Baton Rouge, Keith A. Stutes, Asst. Dist. Atty., Lafayette, for respondent.
Before FORET, YELVERTON and KNOLL, JJ.
FORET, Judge.
On July 27, 1987, relator, Paul J. Azar, M.D., was charged by bill of indictment with thirty-seven counts of computer fraud, a violation of La.R.S. 14:73.5. A motion to quash the indictment was denied on January 22, 1988, after a hearing on the constitutionality of the statute. The trial court granted a stay order pending the filing of the application for writs. We granted a writ of certiorari in order to fully consider relator's claim of unconstitutionality of the statute.
In 1985, Congress passed the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), which added certain new subsections to the Medicare provisions. The new statute prevents cataract surgery patients who are enrolled in the Medicare program from engaging the services of an assistant eye surgeon to work with the primary surgeon. The statute has the effect of severely restricting the payment of assistant surgeon fees by Medicare.
Relator, a Lafayette eye surgeon, has been charged with computer fraud with respect to his computerized billing of assistant eye surgeon fees. The statute he was charged under, La.R.S. 14:73.5, is fairly new and, as of this writing, no cases have been reported under it.
La.R.S. 14:73.5, in pertinent part, reads as follows:
"A. Computer fraud is the accessing or causing to be accessed of any computer, computer system, computer network, or any part thereof with intent to:
(1) Defraud; or
(2) Obtain money, property, or services by means of false or fraudulent conduct, practices, or representations, *443 or through the alteration, deletion, or insertion of programs or data. * * *"
(Emphasis added)
Relator contends that the trial court erred in denying the motion to quash. He asserts that La.R.S. 14:73.5 is unconstitutionally vague and overbroad. First, relator argues that La.R.S. 14:73.5, read in conjunction with the definitions section of the statute, creates a legislative dictate so vague and incomprehensible that it cannot provide a clear basis for criminal prosecution. In particular, relator takes issue with the definitions for "computer" and "access," and the last phrase of subsection (2). Secondly, relator maintains that the last phrase in subsection (2) of the statute which reads ... "or through the alteration, deletion or insertion of programs or data" is overbroad in that its language purports to criminalize innocent conduct, since the language can easily be read as a separate and independent phrase apart from the first phrase of subsection (2).
The definitions for "access" and "computer" are set forth in La.R.S. 14:73.1:
"As used in this Subpart unless the context clearly indicates otherwise:
(1) `Access' means to program, to execute programs on, to communicate with, store data in, retrieve data from, or otherwise make use of any resources, including data or programs, of a computer, computer system, or computer network.
(2) `Computer' includes an electronic, magnetic, optical, or other high-speed data processing device or system performing logical, arithmetic, and storage functions, and includes any property, data storage facility, or communications facility directly related to or operating in conjunction with such device or system. `Computer' shall not include an automated typewriter or typesetter, a machine designed solely for word processing, or a portable hand-held calculator, nor shall `computer' include any other device which might contain components similar to those in computers but in which the components have the sole function of controlling the device for the single purpose for which the device is intended."
Relator was charged with thirty-seven counts of computer fraud. Each count of the indictment is worded exactly the same way, except to allege that the offenses were committed on different days. All of the thirty-seven counts charge that relator "committed the offense of Computer Fraud as defined by Louisiana Revised Statute Title 14, Article 73.5, in that he did access or cause to be accessed, a computer, computer system or computer network, or any part thereof, with the intent to defraud or obtain money by means of false or fraudulent conduct, practices or representations or through the insertion of programs or data."
"The United States Supreme Court has held that a party has standing to challenge the constitutionality of a statute only insofar as it has an adverse impact on his own rights; and, as a general rule, if there is no constitutional defect in the application of the statute to a litigant, he does not have standing to argue that it would be unconstitutional if applied to third parties in hypothetical situations. County Court of Ulster v. Allen, 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979); State v. Turner, 392 So.2d 436, 441 (La.1980)."
State v. Furlow, 460 So.2d 76, 78 (La.App. 1 Cir.1984). Since the indictment has charged computer fraud by using similar language as in the challenged provision, relator has standing to raise the issue of the constitutionality of 14:73.5.

IS THE STATUTE VAGUE OR OVERBROAD?
Relator's first contention is that the statute is vague based on the definitions set forth in La.R.S. 14:73.1, of "computer" and "access." Relator called several witnesses at the hearing on the motion to quash in order to establish the vagueness of 14:73.5. Dr. James Oliver was qualified as an expert regarding computers and computer programming. He testified that two key words in the statute, "computer" and "access," *444 have definitions which leave them subject to ambiguous meanings. Louisiana State Representative Alan Bradley, author of the legislation, testified as to the legislative intent of the statute. He testified that the statute was intended to cover three main areas:
(1) traditional takingwhere someone would electronically transfer money from one bank account to another;
(2) accessing information for the purposes of retrieving that information, copying it and then reselling it without damaging the information in the computer;
(3) "computer vandalism," novice operators who manage to infiltrate a system where they have no authority to be and destroy information.
Relator has asserted that the statute is both vague and overbroad. In order for the principle of overbreadth to apply, a constitutionally protected right must be claimed in the prosecution. State v. Griffin, 495 So.2d 1306 (La.1986). Moreover, overbreadth invalidations of statutes are generally inappropriate when the allegedly impermissible applications of the challenged statute affect conduct rather than speech. Broadrick v. Oklahoma, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); State v. Neal, 500 So.2d 374 (La.1987). The aim of the legislature in drafting and implementing La.R.S. 14:73.5 was to criminalize computer or electronic vandalism and theft of intellectual property or funds by the use of computers. Relator does not contend nor is there any support for the proposition that one has a constitutional right under either the Louisiana or United States Constitution to engage in the conduct sought to be prohibited. Since the statute does not reach a substantial amount of constitutionally protected conduct, the overbreadth challenge must fall. Village of Hoffman Est. v. Flipside, Hoffman Est., 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982).
Relator's contention that La.R.S. 14:73.5 is vague rests on two propositions: 1) that the definitions for "computer" and "access" are vague and, 2) that the last prepositional phrase in subsection (2) of the statute is impermissibly vague. A statute is presumed to be constitutional. State v. Brenner, 486 So.2d 101 (La.1986). A party challenging the statute has the burden of proving its unconstitutionality. State v. Griffin, supra.
"The guarantee of procedural due process embodied in the United States Constitution and Art. I, § 2, of the Louisiana Constitution requires that a criminal enactment contain an ascertainable standard of guilt that is not `so vague and standardless that it leaves the public uncertain as to the conduct it prohibits or leaves judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case.' Giaccio v. Pennsylvania, 382 U.S. 399 at 403, 86 S.Ct. 518 at 520-521, 15 L.Ed.2d 447 at 450 (1966)."
State v. Liuzza, 457 So.2d 664, 665 (La.1984). Under the "void-for-vagueness" doctrine, a criminal statute must meet two requirements to satisfy due process: (1) adequate notice to individuals that certain contemplated conduct is proscribed; and (2) adequate standards for those charged with determining the guilt or innocence of the accused. State v. David, 468 So.2d 1126 (La.1984), cert. denied, 476 U.S. 1130, 106 S.Ct. 1998, 90 L.Ed.2d 678 (1986); State v. Lambert, 514 So.2d 550 (La.App. 3 Cir. 1987).
Relator's expert witness in computers and computer systems gave various examples of conduct which he felt would be covered by the statute but would be legitimate conduct, such as calling the time and temperature number, or using a bank automatic teller machine. All of these activities would involve accessing a computer according to the definitions of the statute. Additionally, relator's expert witness testified that in many cases a person would not be aware of the fact that they have accessed a computer. "[A] penal statute must describe unlawful conduct with sufficient particularity and clarity that ordinary men of reasonable intelligence are capable of discerning its meaning and conforming their *445 conduct thereto." State v. Lambert, supra, at 552, citing State v. Union Tank Car Co., 439 So.2d 377, 385 (La.1983). The statute clearly prohibits the accessing of computers for fraudulent purposes. Nevertheless, the statute requires no knowledge on the part of a user that "access" has occurred. This definition of "access" is unconstitutionally vague insofar as it does not provide adequate notice as to the conduct proscribed. "Adequate notice consists of language which allows ordinary men of reasonable intelligence to understand and obey the law." City of Bossier City v. Gray, 483 So.2d 1090, 1092 (La.App. 2 Cir.1986).
In this day and time when computer technology is such a part of our everyday lives, an ordinary man of reasonable intelligence may access or cause a computer to be accessed without the slightest awareness that this access has taken place. The statute is clearly intended to proscribe that conduct wherein the use of a computer is central and an essential element of the crime, i.e., the crime could not have been committed "but for" the use of a computer. Applying the definition of "access" as it now exists, unlawful conduct may involve only incidental access or use of a computer and remain within the broad parameters of the conduct proscribed by La.R.S. 14:73.5. "A vague statute describes conduct in a manner so unclear that it leaves intelligent people uncertain as to the limits of its application." City of Bossier City, supra, at 1092. We find the definition of "access" set forth in La.R.S. 14:73.1(1), unconstitutionally vague insofar as an accused could be subject to prosecution without any awareness that an "access" to a computer had taken place.
Relator also argues that subsection (2) of La.R.S. 14:73.5 A is unconstitutionally vague. The relevant portion reads:
"Computer fraud is the accessing or causing to be accessed of any computer, computer system, computer network, or any part thereof with the intent to:
* * * * * *
(2) Obtain money, property, or services by means of false or fraudulent conduct, practices, or representations, or through the alteration, deletion or insertion of programs or data." (Emphasis added.)
Dr. Dichmann, qualified as an expert in English grammar and linguistics, testified that the two prepositional phrases in that section are of equal value and can be read in the alternative, so the section could be understood to mean:
1) obtain money, property or services by means of false or fraudulent conduct, practices, or representations; or
2) obtain money, property or services through the alteration, deletion or insertion of programs or data.
Because of the "or" after "representations," it is impossible to read the last prepositional phrase as being modified by the words "false or fraudulent." When the subsection is read according to the fair import of its words, the meaning is not clear as to what conduct is proscribed, since there is no mens rea required to violate that portion of the statute.
The constitutionality of a vague statutory standard is closely related to whether that standard incorporates a requirement of mens rea. United States v. United States Gypsum Co., 438 U.S. 422, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978). The lack of scienter in a statute is little more than a trap for those who act in good faith. Papachristou v. City of Jacksonville, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972). "It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large." Papachristou v. City of Jacksonville, supra, 92 S.Ct. at 845.
The existence of mens rea is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence. Dennis v. United States, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137 (1951); State v. Brown, 389 So.2d 48 (La.1980).
"In a much cited passage from Morissette v. United States, 342 U.S. 246, 250-251, 72 S.Ct. 240, 243, 244, 96 L.Ed. 288 *446 (1952), the United States Supreme Court observed:
`The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil. A relation between some mental element and punishment for a harmful act is almost as instinctive as the child's familiar exculpatory "But I didn't mean to," and has afforded the rational basis for a tardy and unfinished substitution of deterrence and reformation in place of retaliation and vengeance as the motivation for public prosecution. Unqualified acceptance of this doctrine by English common law in the Eighteenth Century was indicated by Blackstone's sweeping statement that to constitute any crime there must first be a "vicious will".'"
State v. Brown, supra, at 50.
The subsection on its face is vague in the conduct it seeks to proscribe. Reading the plain language of the statute, innocent conduct such as use of an automatic teller machine to obtain money could subject one to prosecution under the statute. Persons of ordinary intelligence are not given fair notice of what conduct is forbidden. Accordingly, the language "or through the alteration, deletion, or insertion of programs or data," found in La.R.S. 14:73.5 A subsection (2) is declared unconstitutional.
"The unconstitutionality of one portion of the statute, however, does not necessarily render the entire statute unenforceable. If the remaining portion of the statute is severable from the offending portion, this Court often strikes only the offending portion and leaves the remainder intact."
State v. Williams, 400 So.2d 575, 580 (La.1981).
We find, however, in the case before us, that the unconstitutionally vague definition of "access" is applicable throughout La.R. S. 14:73.5 and, as such, the entire statute cannot withstand constitutional scrutiny and must fall.
For the foregoing reasons, the writ is made peremptory, the ruling of the trial court is reversed, and relator's motion to quash the indictment is granted. All costs of court and cost of the writ application are assessed to respondent, the State of Louisiana.
REVERSED AND RENDERED.